UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 21-cr-178 |
| | : | |
| SHELLY STALLINGS, | : | Honorable Judge Amit P. Mehta |
| | : | |
| | : | |
| Defendants. | : | |

### UNITED STATES' MOTION OPPOSITION TO DEFENDANT STALLING'S MOTION TO AMEND CONDITIONS OF RELEASE (R. 90)

The United States of America opposes defendant Shelly Stalling's motion to modify her conditions of release, specifically the removal of the GPS location-monitoring tether, on which she has only been for less than two months.

Ms. Stallings is charged in this case with 18 U.S.C. § 231(a)(3) (Civil Disorder) in Count 2; 18 U.S.C. § 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon) in Count 6; 18 U.S.C. § 1752(a)(1) and (b)(1)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) in Count 9; 18 U.S.C. § 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) in Count 10; 18 U.S.C. § 1752(a)(4) and (b)(1)(A) (Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon) in Count 11; 40 U.S.C. § 5104(e)(2)(D) (Violent Entry and Disorderly Conduct in a Capitol Building) in Count 12; and 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence in the Capitol Grounds or Buildings) in Count 13. Superseding Indictment, R. 63.

*Stallings's Conduct on January 6*

Ms. Stallings travelled with her husband and co-defendant Peter Schwartz to Washington

D.C. on January 6, 2021. They both engaged in violent attacks of law enforcement that day—including spraying law enforcement with chemical irritants on the West Plaza. The government is in possession of video evidence Ms. Stallings's crimes on January 6th. The below compilation posting from Sedition Hunters' Twitter shows screenshots of Ms. Stallings that day, including her active spraying of law enforcement:

*Image 1*



<u>Stallings's Statements to FBI</u>

In the course of investigating her husband, Peter Schwartz, FBI conducted a search of Schwartz and Stallings's home in February 2021. At the search, while her husband was being arrested, Stallings engaged in a voluntary interview with FBI. At that time Stallings admitted that she and her husband travelled to DC for ex-President Trump's rally on January 6, 2021. In this first interview, she claimed that law enforcement was attacking Schwartz to make him mad and

2

that Schwarz only maced the police to protect her.

During the February 2021 interview, Stallings mentioned knowing of her husband's criminal history and thought he would be a target because of his criminal history. Despite his status as a prohibited person due to his convictions, during the search of the home, FBI found multiple guns in the home. Stallings stated the guns belonged to her, yet Schwartz accompanied her to buy them; Schwartz handled the guns; and the gun store owner told her she could not buy a shotgun because she was married to Schwartz—a prohibited person. After the gun store owner refused to sell to her, she circumvented the rules and bought a Glock from a third party, who knew Schwartz. She also had many knives in the home and said she had a thing for knives.

In June 2021, Stallings reached back out to the FBI to correct her prior statement. At that time, she stated that she planned to divorce Schwartz and that she had previously lied about the guns being hers. She also said that when she previously told FBI that Schwartz only sprayed law enforcement after they sprayed her, that she was lying. She stated that Schwartz sprayed officers and also threw a metal chair at them. At that time, she denied that she assaulted anyone at the Capitol.

Ultimately, FBI learned that Stallings had also assaulted law enforcement on January 6 and met with her one more time in December 2021—voluntarily. At that time, FBI confronted her with the videos and photos of her spraying law enforcement. Upon confrontation, she admitted her conduct and was eventually indicted in this case.

### *Stallings Bond Status*

As this Court is aware, especially in light of the detention litigation of the co-defendants in this case, the government has sought detention for people who have been charged with

violently assaulting law enforcement with a dangerous/deadly weapon. With respect to Stallings, the government considered it a borderline case. Certainly, her violent attacks of law enforcement and the fact that she obtained guns that she allowed her husband—a prohibited person—to handle are signs of her danger to the community. On the other hand, Stallings has no violent criminal history, voluntarily met with law enforcement multiple times, turned over her devices voluntarily and eventually came clean about her conduct. Ultimately in this case, the government agreed to bond with the understanding that it would have some way to assure the safety of the community by monitoring her location.

    The GPS location monitoring tether is a minimally invasive condition that provides some comfort and safety to the community. It does not hinder her daily life or prevent her from doing anything. To date, she has been able to work with her pretrial services officer to make accommodations in advance when needed. The minor inconvenience of having the ankle monitor removed and returned is not a sufficient reason, in the government's eyes, to increase the risk of danger to the community by removing the condition all together at this early stage of the criminal proceedings against her. The government opposes her request for a modification.

    Respectfully submitted,

    MATTHEW GRAVES
    United States Attorney

By:    /s/ *Mitra Jafary-Hariri*
    MITRA JAFARY-HARIRI
    Assistant United States Attorney
    Detailee
    MI Bar No. P74460
    211 W. Fort Street, Suite 2001
    Detroit, MI 48226
    mitra.jafary-hariri@usdoj.gov
    (313) 226-9632