IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **United States of America** | : |
| | : |
| v. | :    Case No.: 21-CR-178 (APM) |
| | : |
| **Shelly Stallings** | : |
| | : |
| **Defendant.** | : |
| | : |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, SHELLY STALLINGS, with the concurrence of her attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd other than the defendant, Shelly Stallings, forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement. Shelly Stallings encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Shelly Stallings's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, Shelly Stallings, lives in Morganfield, Kentucky. On the morning of January 6, 2021, Stallings traveled with her husband, co-defendant Peter Schwartz, from Uniontown, Pennsylvania (where she and Schwartz were residing at the time) to Washington, D.C., via automobile. The purpose of the defendant's trip to Washington, D.C., was for Schwartz to protest Congress' certification of the vote of the Electoral College in the 2020 presidential election. She accompanied Schwartz knowing that this was his intent.

9. On January 6, the defendant, together with co-defendant Schwartz, attended the "Stop the Steal" rally and then marched with other protestors to the Capitol. Co-defendant Schwartz also expressed a desire to protest the certification of the Electoral College vote. They arrived at the Capitol at around 2:00PM.

10. After arrival, they witnessed law enforcement officers defending the Capitol building, using oleoresin capsicum ("OC spray") and tear gas.

11. At about 2:30PM, the defendant and co-defendant Schwartz were a part of a group that had gathered on the Lower West Terrace. The defendant observed co-defendant Schwartz spray oleoresin capsicum (OC) spray at police officers who were trying to protect the grounds and building from rioters. At the time that co-defendant Schwartz sprayed the OC spray, the defendant did not appear to be under attack or otherwise in need of protection from any other person. At the time the defendant observed co-defendant Schwartz spray the OC spray, he did not appear to be defending himself, the defendant, or any other person.

12. Either co-defendant Schwartz or Jeffrey Brown handed the defendant a canister of OC spray and told her to spray as well. The defendant then briefly sprayed the OC spray at police officers who were trying to protect the grounds and building from rioters. The officers, who were members of the United States Capitol Police and the District of Columbia's Metropolitan Police Department, were in full uniform and were clearly identifiable as law enforcement. At no time did any of these officers attempt to assault the defendant and the defendant did not spray the officers in self-defense.

### *Charges and Maximum Statutory Penalties*

13. Defendant is charged in Count 2 of the indictment herein with Civil Disorder in violation of 18 U.S.C. §§231(a)(3) and 2; in Count 6 with Assaulting, Resisting, or Impeding Certain Officers or Employees Using a Dangerous Weapon in violation of 18 U.S.C. §§111(a)(1) and (b); in Count 9 with Entering and Remaining in a Restricted Building or Grounds with a Dangerous Weapon in violation of 18 U.S.C. §§1752(a)(1) and (b)(1)(A); in Count 10 with Disorderly and Disruptive Conduct in a Restricted Building or Grounds Using a Dangerous Weapon in violation of 18 U.S.C. §§1752(a)(2) and (b)(1)(A); in Count 11 with Engaging in Physical Violence in a Restricted Building or Grounds with a Dangerous Weapon in violation of 18 U.S.C. §§1752(a)(4) and (b)(1)(A); in Count 12 with Disorderly Conduct in the Capitol Grounds or Buildings in violation of 40 U.S.C. §5104(e)(2)(D); and in Count 13 with Engaging in an Act of Physical Violence in the Capitol Grounds or Buildings in violation of 40 U.S.C. §5104(e)(2)(F).

14. Count 2 carries a maximum sentence of 5 years imprisonment, a maximum term of supervised release of 3 years, a maximum fine of $250,000.00, and a special assessment of $100.00. Count 6 carries a maximum sentence of 20 years imprisonment, a maximum term of supervised release of 3 years, a maximum fine of $250,000.00, and a special assessment of $100.00. Counts 9, 10, and 11 each carry a maximum sentence of 10 years imprisonment, a maximum term of supervised release of 3 years, a maximum fine of $250,000.00, and a special assessment of $100.00. Counts 12 and 13 each carry a maximum sentence of 6 months imprisonment, a maximum fine of $5,000.00, and a special assessment of $25.00.

## *Elements of the Offense*

15. Shelly Stallings knowingly and voluntarily admits the following:

A. Count 2, Civil Disorder in violation of 18 U.S.C. § 231(a)(3): the defendant admits that she committed an act to obstruct a law enforcement officer who was lawfully engaged in the lawful performance of his official duties, incident to and during the commission of a civil disorder, which adversely affected commerce or the movement of any article in commerce or the conduct or performance of any federally protected function.

B. Count 6, Assaulting, Resisting, or Impeding Certain Officers or Employees Using a Dangerous Weapon in violation of 18 U.S.C. §§111(a)(1) and (b): the defendant admits that she forcibly resisted, opposed, impeded, intimidated, or interfered with a person designated in 18 U.S.C. §1114 while engaged in or on account of the performance of their official duties. Specifically, the defendant admits that, using a dangerous weapon, to wit:

pepper spray, she did forcibly resist, oppose, impede, intimidate, and interfere with an officer and employee of the United States Capitol Police or a person assisting the United States Capitol Police, that is, an officer from the Metropolitan Police Department. The defendant further admits that she knew at the time of the resisting, opposition to, impeding of, intimidation of, or interference with the officer that the officer was engaged in the performance of their official duties.

C. Count 9, Unlawfully Entering and Remaining with a Dangerous Weapon in violation of 18 U.S.C. §§1752(a)(1) and (b)(1)(A): the defendant admits that she knowingly used a dangerous weapon, to wit: pepper spray, while remaining in a restricted area, and she further admits that she knew the area was restricted and that she lacked the lawful authority to remain there.

D. Count 10, Disorderly and Disruptive Conduct with a Dangerous Weapon in violation of 18 U.S.C. §§1752(a)(2) and (b)(1)(A): the defendant admits that she used a dangerous weapon, to wit: pepper spray, in relation to disorderly or disruptive conduct she admits she knowingly engaged in in a restricted area, with the intent to impede or disrupt the orderly conduct of government business.

E. Count 11, Engaging in Physical Violence in violation of 18 U.S.C. § 1752(a)(4) and (b)(1)(A): the defendant admits that she used a dangerous weapon, to wit: pepper spray, in relation to an act of physical violence against a person, which she admits she knowingly engaged in in a restricted area.

F. Count 12, Disorderly Conduct on Capitol Grounds in violation of 40 U.S.C. § 5104(e)(2)(D): the defendant admits that she engaged in disorderly or disruptive conduct in the grounds of the Capitol building, with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress.

G. Count 13, Acts of Physical Violence on Capitol Grounds in violation of 40 U.S.C. § 5104(e)(2)(F): the defendant admits that she willfully and knowingly engaged in an act of physical violence in the grounds of the Capitol building.

## *Tentative Guideline Calculations*

The United States agrees that all of the charges herein constitute a single group under U.S.S.G. §3D1.2 and that Count 6 is the most serious charge. The United States calculates the total offense level for the whole case to be as follows:

| | | |
|---|---|---|
| U.S.S.G. §2A2.2 | Base Offense Level | +14 |
| U.S.S.G. §2A2.2(b)(2)(B) | Use of a Dangerous Weapon | +4 |
| U.S.S.G. §2A2.2(b)(7) | Convicted under 18 U.S.C. §111(b) | +2 |
| U.S.S.G. §3A1.2 | Official Victim | +6 |
| U.S.S.G. §3E1.1(a) | Acceptance of Responsibility | -2 |
| U.S.S.G. §3E1.1(b) | Timely Plea | -1 |
| **Total Offense Level** | | **23** |

Defendant reserves the right to object to these or any other guideline calculations and to make all appropriate motions for downward departure and variance.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: *[signature]*
STEPHEN J. RANCOURT
Assistant United States Attorney, Detailee
Texas Bar No. 24079181
601 D Street, NW Washington, DC 20530
(806) 472-7398
stephen.rancourt@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Shelly Stallings, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 8/19/22

*[signature]*
SHELLY STALLINGS
Defendant
By: *[signature]*
Attorney for Defendant

## ATTORNEY'S ACKNOWLEDGMENT

  I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: __8/19/22__        _/s/ Scott Wendelsdorf_
                  SCOTT WENDELSDORF
                  Attorney for Defendant